ELISHA P. CUTLER & another *vs.* ALBERT H. LENNOX
& another.

Suffolk.    March 18. — Sept. 5, 1884.    DEVENS & COLBURN, JJ., absent.

A., the mortgagee in possession of a vessel, who was under a contract to sell his interest in the vessel to B. for a certain sum, made a contract with C., by which, in consideration of the payment by C. to A. of a sum named, and that C. would pay a further sum upon the signing of a bill of lading by B. for cargo on the vessel for an immediate voyage to L., and would also pay a certain other sum in advance on each of three subsequent and successive voyages of the vessel, (all the payments being on account of the amount that B. had agreed to pay A. for his interest in the vessel,) A. agreed to place B. in charge of the vessel "without assuming any responsibility under charter-parties made by him," and, the payments to A. being duly made, not to foreclose the mortgage during the pendency of certain charter-parties between B. and C. Under this authority to B. from A., he made to C. the charter-parties referred to. One covered the contemplated voyage to L. The other provided for another voyage from N. to a safe port in the M. sea, or to a direct port between X. and G.; and that the charterer should pay a certain sum for the round voyage, part on the delivery of the outward cargo and the balance on the delivery of the homeward cargo. The following clause was then written in: "The within-named vessel is under charter to C. to load for a port between G. and X., and this present charter-party is made and concluded upon for three successive voyages with same range of ports and all conditions for each round voyage as the within charter-party, and to take effect upon the termination of each respective voyage." The following was also written in: "Charterer to advance the captain, at the begin-ning of each of the three round voyages and at the time the vessel has com-menced loading, the amount" above mentioned "payable to the order of A." The two payments specified in the contract between A. and C. were duly made

before the commencement of the voyage to L. Before the first of the three voyages was begun, B. and C., without A.'s knowledge, agreed in writing that the charterer might substitute for that voyage another voyage, the amount of the charter and the other conditions remaining the same. The vessel started on the substituted voyage, and on her return was lost. Neither of the three instalments specified was paid. *Held*, in an action on the contract, by A. against C., that A. could recover the first instalment only.

W. ALLEN, J. The plaintiffs, being mortgagees and in possession of the barque J. E. Fisher, and under a contract to sell their interest in the vessel to one Williams for $4500, made a contract with the defendants by which, in consideration of the payment by the defendants to the plaintiffs of $1000, and an agreement that they would pay $1000 more upon the signing of the bill of lading by Williams for cargo on the vessel for an immediate voyage to Lisbon, and would also pay $666.66 in advance on each of three subsequent and successive voyages of the vessel, (all the payments being on account of the amount that Williams had agreed to pay the plaintiffs for their interest in the vessel,) the plaintiffs agreed to place Williams in charge of the vessel, and, the payments to them being duly made, not to foreclose the mortgage during the pendency of certain charter-parties between Williams and the defendants. Under this authority to Williams from the plaintiffs, he made to the defendants the two charter-parties referred to. One covered the contemplated voyage to Lisbon; the material part of the other is as follows: " For a voyage from New York to a safe port in the Mediterranean calling at Gibraltar for orders, if required, allowing forty-eight hours for waiting for orders, or to a direct port between Bordeaux and Gibraltar for discharging outward cargo, and thence for return cargo back from the port of discharge, or another port within the limits as above (but from the Mediterranean only if vessel is ordered there with outward cargo) to New York, Philadelphia, or Baltimore."

The charterers agreed to pay $2300 for the round voyage, $1300 on the delivery of the outward cargo, and the balance on the delivery of the homeward cargo. The following clause is then written in: " The within-named vessel is under charter to Lennox and Burgess to load for a port between Gibraltar and Bordeaux, and this present charter-party is made and concluded upon for three successive voyages with same range of ports and

all conditions for each round voyage as the within charter-party, and to take effect upon the termination of each respective voyage." At the end of the agreement the following is written in: "Charterers to advance the captain at the beginning of each of the three round voyages, and at the time the vessel has commenced loading, the amount of $666.66, payable to the order of E. P. Cutler & Co. of Boston."

The two payments of $1000 were duly made before the commencement of the voyage to Lisbon. The date of the charter-parties was April 9, 1881, and that of the agreement between the plaintiffs and the defendants was April 13. On October 27, 1881, before the first of the three voyages was commenced, the defendants and Williams agreed in writing that the charterers might substitute for the first of the three voyages under the charter-party a voyage from New York to Santos and back from there, or a second port in Brazil to a port in the United States north of Cape Hatteras, the amount of the charter and the other conditions remaining the same. This agreement was without the knowledge of the plaintiffs. The vessel started on that voyage, and on her return was lost off the coast of Brazil in February, 1882. Neither of the three instalments of $666.66 has been paid; and this action is brought to recover them. The case was tried without a jury, and comes up upon the report of the presiding judge.

The court properly declined to rule, as requested by the defendants, that the relation of the parties under the charter-party or otherwise was such that the action could not be maintained. The action is not upon the charter-party.

It appeared in evidence that voyages between New York and ports between Bordeaux and Gibraltar were safer, and two months shorter, than voyages between New York and Santos; and that voyages from New York to the farthest safe ports in the Mediterranean were longer and more dangerous than from New York to Santos. The plaintiffs asked for rulings based upon a construction of the charter-party which limited the range of voyages to those between New York and ports beween Gibraltar and Bordeaux; but the court correctly ruled that voyages between New York and any safe port in the Mediterranean were authorized, and that the vessel could take a return

cargo from the Mediterranean only when the outward cargo was to a Mediterranean port. The range of ports, when providing for a single voyage, is expressly given in the alternative to a safe port in the Mediterranean, or to a direct port between Bordeaux and Gibraltar; and, when the charter-party is extended to three successive voyages with the same range of ports and all conditions for each voyage as the "within charter," the meaning clearly is that the three voyages shall be with the same range of ports, and the reference to the other charter to which the vessel was then subject was only to indicate the time when the three successive voyages should commence.

The plaintiffs asked the court to rule that the defendants had no right, without the plaintiffs' consent, to employ the vessel on other voyages than those specified and limited in the charter-party; and that, in consequence of the loss of the vessel when on such a voyage, the defendants were liable for the whole of the three instalments, or their equivalent in damages; but the court ruled that the agreement of October 27, 1881, by which the voyage was changed, was one which it was competent for the parties to the charter-party to make without the consent of the plaintiffs. The ruling was correct. The agreement between the plaintiffs and the defendants does not refer to the charter-party except in respect to the foreclosure of the mortgage, and by the agreement the plaintiffs were to give up the charge of the vessel to Williams, "without assuming any responsibility under charter-parties made by him," and the vessel was accordingly delivered to him. The fact that the contract was made in contemplation of the execution or confirmation of the charter-party, does not show that there was any understanding or agreement that it should be limited to voyages expressed in that instrument. There was no restriction on the authority of Williams, and the defendants came under no obligation to the plaintiffs to employ the vessel on any particular voyage.

It is contended by the plaintiffs, that there was an obligation and implied contract on the part of the defendants not to employ the vessel on voyages longer or more dangerous than those contemplated by the parties, and provided for in the charter-party. But, if this were so, it is a fact rendered undisputed by the true

construction of the instrument, that the substituted voyage was not longer or more dangerous than those authorized.

The voyage to Santos was the first of the three successive voyages mentioned in the agreement between the plaintiffs and the defendants, and the first instalment became due upon its inception. As the vessel was lost without the fault of the defendants before the completion of the first voyage, the other voyages can never be commenced, and the other instalments can never become due. There has been no breach of the contract by the defendants, except the non-payment of the first instalment; and the court properly found for the plaintiffs upon the count which included that breach, and for the defendants upon the other count. *Judgment accordingly.*

*J. O. Teele*, for the plaintiffs.

*H. E. Morse*, for the defendants.